## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Mark Greene, | : | Case No. 01:11CV00323 |
| Petitioner, | : | |
| vs. | : | |
| Kimberly Clipper, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | : | |

### I. INTRODUCTION.

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending is a Petition under 28 U. S. C. § 2254 for Writ of Habeas Corpus, Respondent's Answer/Return and Petitioner's Traverse (Docket Nos. 1, 9 & 12).  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

### II. FACTUAL BACKGROUND.

Petitioner filed his habeas corpus Petition in February 2011, well after the 1996 effective date of the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996); therefore, the provisions of that Act apply to this case.  *Keith v.*

*Mitchell*, 455 F. 3d 662, 665-666 (6th Cir. 2006) (*see Lindh v. Murphy*, 117 S. Ct. 2059, 2067 (1997); *Frazier v. Huffman*, 343 F.3d 780, 787 (6th Cir. 2003), opinion altered on denial of reh'g, 348 F.3d 174 (2003), *cert. denied*, 124 S. Ct. 2815 (2004)).  Under AEDPA, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).  In this case, the Ohio Court of Appeals summarized the facts from the underlying crime as follows:

{¶ 6} On April 12, 2006, Brian Williamson ("the victim") was shot in the face as a result of a drive-by shooting.  According to the victim, he had been socializing with some friends at the home of Veronica Focareto ("Veronica").  At 10:00 p.m., he was playing football in the street with Jason Kuzma ("Jason").  The victim testified that a white man, wearing a blue bandana, drove down the street in a white car yelling, "Give me a beer, b****."  One of the friends threw a beer can at the car.  In response, the driver apparently tried to run over the victim, but hit garbage cans instead.  The victim ran to the car, tried to hit the driver, and threw a garbage can at the car as it sped off.

{¶ 7} One hour later, the victim returned to Veronica's neighborhood to visit his friend, Chris Windland, with several other friends, including Jason.  Windland's house was across the street from Veronica's house.  The friends noticed a car driving around.  According to the victim, the car approached him and Jason as they stood on the sidewalk.  The victim stated that the car's passenger shot at him three times.  The victim testified that he "believed it was" and "had a feeling it was" the same person he had the confrontation with earlier.

{¶ 8} Veronica witnessed both altercations.  She testified that the driver of the first car wore a blue and black bandana.  The victim yelled at the car and chased the driver, ultimately punching him.  According to Veronica, later that evening, a white car was driving around.  She identified the driver of the car as co-defendant Seth.  Veronica stated that the passenger-shooter was the same person she saw driving the car earlier in the evening in the first altercation.  This person was still wearing the blue bandana.  Veronica saw the passenger lift his arm over the top of the car, then she heard shots.

{¶ 9} Jason testified that, during the first incident, he was drinking beer with the victim and other friends at Veronica's house.  He stated that a car drove up and someone said, "Hey, can I get a beer?"  Two of the friends threw beer at the car.  When the car backed up, the victim tried to punch the driver.  Later, before the second incident, Jason noticed a white car driving around.  He noticed a "kid" hanging out the side of the car and saw him shoot two or three times.

{¶ 10} Co-defendant Seth testified that Petitioner shot at the victim to retaliate for the earlier incident between the two.  Seth stated he got involved after Petitioner called him and asked for help with "retaliation."  Seth picked up Petitioner in his vehicle and lent him his .40 caliber handgun.  Petitioner told Seth that he planned to shoot the gun into the air to scare the victim.  Petitioner was wearing a blue bandana.  At the scene, Petitioner climbed out the window

2

of the vehicle and stated, "What's up now, punk?"  According to Seth, Petitioner fired three shots, then they drove off.

{¶ 11} Seth further testified that Petitioner threw his gun out the car window and jumped out of the car.  After being stopped by the police, Seth tried to run on foot, but the police apprehended him.  Seth told the police that the shooter was "Mark Anthony."  While he was being arrested, Seth's cell phone rang, and the police answered it.

{¶ 12} According to Officer Thomas Magyar, Seth ran from the car, but was later apprehended.  Petitioner was nowhere to be seen, but it was later learned that he had called his friend, Dawn Upchurch, for a ride home.  Police found an unspent .40 caliber bullet and a blue bandana near Seth's car.

{¶ 13} Seth's mother, Victoria Green ("Victoria"), testified that her son went out that night.  Seth's brother, Joshua Green ("Joshua"), corroborated this information.  Victoria went to look for Seth after learning from her daughter, Melissa, that he had been arrested.  According to Victoria, Melissa told her that she tried to call Seth, but the police answered his phone.

{¶ 14} According to Joshua, he received a call from Petitioner requesting that he remove a handgun from Fulton Parkway, near where Seth was apprehended.  Joshua did as he was asked.

{¶ 15} Dawn Upchurch testified that Petitioner is her ex-boyfriend, but they still live together and he was at home with her the evening of the incident.

{¶ 16} The principle evidence against Petitioner was the testimony of Seth and Joshua.  Additionally, Keith Martin, representative of Revol, Petitioner's cell phone provider, testified regarding cell phone records, which established that Petitioner made phone calls to Seth, Joshua, and Dawn Upchurch during times covering the two incidents.

{¶ 17} The victim suffered a gun shot wound to the face.  He now suffers from deafness in one ear, partial facial paralysis, debilitating headaches, focusing problems, paranoia, dizzy spells, and flashbacks of his attack.

*State v. Greene*, 2009 Ohio 850 at ¶¶ 6-17, 2009 Ohio App. LEXIS 701.

### III. PROCEDURAL BACKGROUND.

**A.    INDICTMENT, TRIAL AND SENTENCING.**

In May of 2007, Petitioner was indicted by a Cuyahoga County Grand Jury as follows for

offenses occurring on April 12, 2006:

| COUNT 1 | Attempted murder in violation of OHIO REV. CODE § 2923.02(A), with firearms specifications under OHIO REV. CODE §§ 2941.141, 2941.145 and 2941.146; a notice of prior conviction specification, a violation of OHIO REV. CODE § 2903.04l; and a repeat violent offender specification, a violation of OHIO REV. CODE § 2903.04. |
|---|---|
| COUNT 2 | Felonious assault in violation of OHIO REV. CODE § 2903.11(A)(1) and (2), each with three firearms specifications under OHIO REV. CODE §§ 2941.141, 2941.145 and 2941.146, a notice of prior conviction |

3

|  | specification, in violation of OHIO REV. CODE § 2903.04, and a repeat violent offender specification, a violation of OHIO REV. CODE § 2904.04. |
|---|---|
| COUNT 3 | Felonious assault in violation of OHIO REV. CODE § 2903.11(A)(1) and (2), each with three firearms specifications under OHIO REV. CODE §§ 2941.141, 2941.145 and 2941.146, a notice of prior conviction specification, in violation of OHIO REV. CODE § 2903.04, and a repeat violent offender specification, a violation of OHIO REV. CODE § 2904.04. |
| Count 4 | Having weapons under disability in violation of OHIO REV. CODE § 2923.13(A)(2). |

(Docket No. 9, Attachment 1, pp. 1-4 of 288).

On November 16, 2007, Petitioner, *pro se*, filed a motion to dismiss claiming that he was being held in violation of his statutory right to a speedy trial (Docket No. 9, Attachment 1, p. 6 of 288).  On November 20, 2007, Petitioner, through counsel, filed a waiver of speedy trial for the period of November 19, 2007 through December 31, 2007 (Docket No. 9, Attachment 1, p. 7 of 288).

On January 7, 2008, Petitioner waived his right to a jury trial on the fourth count, having weapons under disability (Docket No. 9, Attachment 1, p. 8 of 288).  Petitioner's trial on the remaining charges began on the same day.  Petitioner was acquitted on count one, the attempted murder charge and convicted on both counts two and three, the felonious assault, including all firearms specifications in count two of the indictment.  At the close of all evidence, the prosecution dismissed the notice of prior conviction and repeat violent offender specifications. The trial court found Petitioner guilty of having weapons under disability (Docket No. 9, Attachment 1, pp. 9, 10 of 288).

A journal entry was entered on February 7, 2008, in which Petitioner was sentenced to sixteen years of incarceration which included one and three-year firearm specifications merged for the purpose of sentencing; a sentence of three years as to the firearm specification was

4

imposed to be served prior and consecutive to the underlying sentence; the sentence of five years as to the firearm specification was imposed to be served prior and consecutive to the underlying felony sentence and the three-year gun specification; a sentence of eight years as to the felonious assault; and a sentence of one year as to count four to be served concurrently with the felonious assault (Docket No. 9, Attachment 1, p. 11 of 288).

**B.    THE DIRECT APPEAL.**

Petitioner perfected a notice of appeal in the Court of Common Pleas for Cuyahoga County, Ohio, on March 4, 2008 (Docket No. 9, Attachment 1, p. 12 of 288).  There were fourteen assignments of error presented to the court of appeals:

1.    Petitioner was denied due process of law when motion to dismiss based upon the lack of a speedy trial was denied.
2.    Petitioner was denied due process of law when the court refused to grant a continuance because of repeated discovery violations by the State.
3.    Petitioner was denied his right of confrontation and cross-examination when the court permitted a witness from Revol to testify based on hearsay information.
4.    Petitioner was denied due process of law when the court allowed Brian Williamson to testify as to his beliefs and what other person had told him.
5.    Petitioner was denied due process of law when the court admitted the entirety of impeaching statements.
6.    Petitioner was denied a fair trial by reason of cumulative errors.
7.    Petitioner was denied due process of law when the court refused to give any instruction concerning an alibi.
8.    Petitioner was denied due process of law when the court would not instruct the jury that guilty pleas by co-defendant could not be considered evidence of Petitioner's guilt.
9.    Petitioner was denied due process of law when the court would not define for the jury the underlying felony necessary for the five (5) year firearm specification
10.   Petitioner was denied due process of law when he was convicted of a firearm specification which required a consecutive sentence and did not require any culpable mental state.
11.   Petitioner was denied due process of law when the court imposed a sentence for a merged felonious assault verdict.
12.   Petitioner was denied due process of law and subjected to unconstitutional multiple sentences when he was consecutively sentenced for the same firearm.
13.   Petitioner was denied due process of law when the court overruled Petitioner's motion for judgment of acquittal.

5

14.    Petitioner was entitled to a new trial as the conviction is against the manifest weight of the evidence.

(Docket No. 9, Attachment 1, pp. 32-34 of 288).

On October 27, 2008, the Court of Appeals for the Eighth Appellate District, *sua sponte*, issued an order to the trial court to clarify its sentencing entry (Docket No. 9, Attachment 1, p 150 of 288). On November 13, 2008, the trial court issued a supplemental journal entry which clarified the sentencing order (Docket No. 9, Attachment 1, pp. 151-152 of 288). On February 26, 2009, the appellate court released its decision which sustained Petitioner's claim that he was sentenced twice for a merged felonious assault conviction, affirmed the judgment on the remaining claims and remanded the case to the common pleas court for resentencing consistent with the Eighth District's decision (Docket No. 9, Attachment 1, pp. 153-193, 194-205 of 288). Petitioner, through counsel, filed a motion for reconsideration or for rehearing *en banc* and a motion for certification of conflict on March 9, 2009, (Docket No. 9, Attachment 1, pp. 207-211, 213-214 of 288). The prosecution opposed both motions (Docket No. 9, Attachment 1, pp. 216-218, 219-222 of 288).

On April 13, 2009, the Eighth District Court of Appeals denied the motion for reconsideration or for hearing *en banc* without opinion and denied the motion for certification of conflict without opinion (Docket, No. 9, Attachment 1, pp. 223, 224 of 288).

On May 26, 2009, Petitioner, through counsel, filed a notice of appeal in the Ohio Supreme Court (Docket No. 9, Attachment 1, pp. 225-226 of 288). In the memorandum in support of jurisdiction, Petitioner asserted twelve propositions:

1.    A defendant has been denied due process of law when he has been denied his statutory right to a speedy trial.

6

2.     A defendant has been denied due process of law and fair trial when the court refused to grant a continuance because of the ongoing discovery violations perpetrated by the State of Ohio.

3.     A defendant has been denied his right of confrontation and cross-examination when a witness testifies to matters based on hearsay information.

4.     A defendant has been denied due process of law when the court allowed a witness to testify as to his beliefs and what other persons had told him.

5.     A defendant has been denied due process of law when the court admits the entirety of impeaching statements at the request of the prosecutor and they were only used by the defense for impeachment.

6.     A defendant has been denied a fair trial by reason of allowing a witness to testify as to the credibility of other witnesses.

7.     A defendant has been denied due process of law when the court refuses to give an instruction concerning an alibi.

8.     A defendant has been denied due process of law when the court refused to instruct the jury that a guilty plea by a co-defendant could not be considered as evidence of Petitioner's guilt.

9.     A defendant has been denied due process of law when the court fails to define for the jury the underlying felony necessary to support a five (5) year firearm specification.

10.     A defendant has been denied due process of law when he was convicted of a firearm specification which required a consecutive sentence but did not require any allegation of a culpable mental state.

11.     A defendant has been denied due process of law and subject to unconstitutional multiple punishments when he was consecutively sentenced for use of the same firearm.

12.     A defendant has been denied due process when his conviction is based upon evidence which would not permit a rational fact-finder to return a verdict of guilty.

(Docket No. 9, Attachment 1, pp. 228-229 of 288).

On June 1, 2009, the prosecution waived the opportunity to file a memorandum in response (Docket No. 9, Attachment 1, p. 287 of 288).  The Supreme Court of Ohio entered an order on August 26, 2009, denying Petitioner leave to appeal and dismissing the appeal as not involving any substantial constitutional question (Docket No. 9, Attachment 1, p. 288 of 288).

**C.**     **POST CONVICTION RELIEF**

**1.**     **MOTION FOR NEW TRIAL.**

On May 9, 2008, Petitioner, through counsel, filed a motion for new trial based on newly

discovered evidence in the court of common pleas.  Petitioner asserted that he was entitled to a new trial because the trial court dismissed the attempted murder count against co-defendant, Seth Green, subsequent to Petitioner's trial (Docket No. 9, Attachment 2, pp. 1-7 of 148).  On or about December 5, 2008, the trial court denied the Petitioner's motion for a new trial based on "new discovered evidence" (Docket No. 9, Attachment 2, p. 31 of 148).

Petitioner, through counsel, filed a notice of appeal on January 6, 2009 in the Eighth District Court of Appeals (Docket No. 9, Attachment 2, p. 47 of 148).  He alleged one assignment of error:

> Petitioner was denied due process of law when the court overruled Petitioner's motion for a new trial based on newly discovered evidence.

> (Docket No. 9, Attachment 2, pp. 69 of 148).

The court of appeals released a judgment affirming the trial court's decision denying Petitioner a new trial based on newly discovered evidence on December 3, 2009 for the reasons that Petitioner had not exemplified his claim as required by OHIO APP. R. 16(A)(7), and that there was no probability whatsoever that the outcome of Petitioner's trial would have been different if the jury had been informed that his co-defendant had been acquitted on the attempted murder count (Docket No. 9, Attachment 2, pp. 88-94 of 148).

Petitioner, through counsel, filed a motion for reconsideration on December 14, 2009 (Docket No. 9, Attachment 2, pp. 95-97 of 148).  The prosecution opposed Petitioner's motion (Docket No. 9, Attachment 2, pp. 98-103 of 148).  Without discussion, the court of appeals denied the motion on January 11, 2010 (Docket No. 9, Attachment 2, p. 104 of 148).

On February 22, 2010, Petitioner, *pro se*, filed a notice of appeal in the Supreme Court of Ohio from the order denying the motion for a new trial entered by the court of appeals on

8

January 11, 2010 (Docket No. 9, Attachment 2, pp. 105-106 of 148).  He raised the following proposition of law:

> A defendant has been denied due process of law when a trial court fails to adhere to the purpose and the construction of the OHIO RULES OF CRIMINAL PROCEDURE [Crim. R. 1(B) and 33((A)] ... and thereafter, the court of appeals substitutes its judgment for the trial court's where new evidence demonstrates that a witness [co-defendant] may have credibility issues and the prosecutor failed to correct testimony he knows to be false.

(Docket No. 9, Attachment 2, pp. 107-115 of 148).

On May 26, 2010, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question (Docket No. 9, Attachment 2, 125 of 148).

### 2.    MOTION FOR CLARIFICATION

On April 8, 2010, the trial court entered an order *nunc pro tunc*, amending the language in the November 13, 2008 entry so that it complied with the court of appeals ruling dated February 26, 2009, thereby deleting the language "sentence of eight years as to counts two and three, felonious assault are to be served concurrently to each other" and replaced with "sentence of eight years as to count three, felonious assault" (Docket No. 9, Attachment 1, p. 206 of 288).

### 3.    PETITION FOR WRIT OF HABEAS CORPUS.

Petitioner filed a Petition under Section 2254 for Writ of Habeas Corpus on February 15, 2011.  He alleged the following grounds for relief:

(1)    "Petitioner was denied due process of law when his motion to dismiss was denied. Speedy trial is guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution."

(2)    "Petitioner was denied due process of law when the Court would not instruct the jury that guilty pleas by co-defendant could not be considered evidence of his guilt."

(3)    "New evidence argued that co-defendant's acquittal on the attempt murder counts constituted newly discovered evidence because the jury was not informed of this change of direction which only came to light after the trial in petitioner's case."

9

(Docket No. 1).

### IV. Habeas standard of Review.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Balderson v. Miller,* 2012 WL 1344377, *8 (N. D. Ohio 2012) (*citing* 28 U.S.C. § 2254(d)). The controlling AEDPA provision states that a decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* (*citing Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (*quoting Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)). A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. (*citing Otte,* 654 F. 3d at 599–600; *quoting Williams*, 120 S. Ct. at 1523).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id. (citing Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (*quoting Harrington v. Richter*, 131 S. Ct. 770, 786–87

10

(2011)).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Richter*, 131 S. Ct. at 786; *quoting Jackson v. Virginia*, 99 S. Ct. 2781, 2785, n. 5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (*quoting Yarborough v. Alvarado*, 124 S. Ct. 2140, 2148 (2004)).  The petitioner carries the burden of proof. *Id.* (*citing Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)).

## V. DISCUSSION.

The Magistrate will first examine whether Petitioner has complied with the procedural devices established to challenge illegal confinement.  Those claims that are not barred from review for failure to exhaust or by procedural default are reviewed on their merits.

### 1.    EXHAUSTION STANDARDS.

A state prisoner must exhaust his state remedies before bringing his claim in a federal habeas corpus proceeding. *Drummond v. Houk,* 761 F. Supp. 2d 638, 662 (N. D. Ohio 2010) (*citing* 28 U.S.C. § 2254(b), (c); *see Rose v. Lundy*, 102 S. Ct. 1198, 1205 (1982)).  Exhaustion is fulfilled once a convicted defendant seeks review of his or her claims on the merits from a state supreme court. *Id.* (*citing O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1732 (1999)).  A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims. *Id.* (*citing Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (*citing Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).  If, under state law, there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the

11

claim. *Id.* (*see Rust*, *supra*).

A petitioner "'cannot obtain federal habeas relief under 28 U.S.C. § 2254 unless he has completely exhausted his available state court remedies to the state's highest court.' " *Id.* at 663 (*citing Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (*quoting Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001)). In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. *Id.* (*see Buell*, *supra*, 274 F.3d at 34). To obtain a merit review of the claim, the petitioner must demonstrate cause and prejudice to excuse his failure to raise the claim in state court, or that a miscarriage of justice would occur were the habeas court to refuse to address the claim on its merits. *Id.* (*citing Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (*citing Wainwright v. Sykes,* 97 S. Ct. 2497, 2506 (1977)).

## 2. PROCEDURAL DEFAULT STANDARDS.

In general, a federal court may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Id.* (*citing Syke*s, 97 S. Ct. at 2506). If a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (*citing Coleman v. Thompson*, 111 S. Ct. 2546, 2564-2565 (1991)).

To be independent, a state procedural rule and the state courts' application of it "must rely in no part on federal law." *Id.* (*citing Fautenberry v. Mitchell*, No. C-1-00-332, 2001 WL 1763438, at * 24 (S. D. Ohio 2001) (*citing Coleman, supra*, 111 S. Ct. at 2555-2556). To be

adequate, a state procedural rule must be " 'firmly established and regularly followed' " by the state courts at the time it was applied.  *Id.* (*citing Beard v. Kindler,* 130 S. Ct. 612, 618 (2009) (*quoting Lee v. Kemna,* 122 S. Ct. 877, 885 (2002)).  If a petitioner failed to timely present any federal habeas claims to the state courts but has no remaining state remedies, then the petitioner has procedurally defaulted those claims.  *Id.* (*see Boerckel*, *supra,* 119 S. Ct. at 1734; *Rust*, *supra*, 17 F.3d at 160).

In *Maupin v. Smith,* 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit outlined that now familiar test to be followed when the state argues that a habeas claim is defaulted because of the petitioner's failure to observe a state procedural rule.  The four-part test is summarized as follows:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.  Second, the federal court must determine whether the state courts actually enforced the state procedural sanction-that is, whether the state courts actually based their decisions on the procedural rule.  Third, the federal court must consider whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim.  Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Id.* (*citing Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (*citing Maupin, supra*, 785 F.2d at 138) (further citations omitted)).

In determining whether the *Maupin* factors are met, the federal court looks to the "last explained state court judgment."  *Id.* (*citing Ylst v. Nunnemaker*, 111 S. Ct. 2590, 2595 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000)).  " '[A] procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case clearly and expressly states that its judgment rests on a state

13

procedural bar.' " *Id.* (*citing Morales*, 507 F.3d at 937) (*quoting Frazier v. Huffman,* 343 F.3d 780, 791 (6th Cir. 2003)).  Conversely, if the last state court to be presented with a particular federal claim reaches the merits, then the procedural bar is removed and a federal habeas court may consider the merits of the claim in its review.  *Id.* (*see Ylst*, *supra*, 111 S. Ct. at 2593).

If the first three *Maupin* factors are met, the claim is procedurally defaulted.  *Id.* However, the federal court may excuse the default and consider the claim on the merits if the petitioner demonstrates that (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error, or (2) a fundamental miscarriage of justice would result from a bar on federal habeas review.  *Id.* (*see Maupin*, 785 F.2d at 138; *Hutchison v. Bell,* 303 F.3d 720, 735 (6th Cir. 2002); *Combs*, *supra*, 205 F.3d at 274-275; *Coleman,* 111 S. Ct. at 2564-2565)).

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.  *Kirby v. Beightler,* 2010 WL 3370534, *4 (N. D. Ohio 2010) (*citing Coleman*, *supra*, 111 S. Ct. at 2565).  Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.  *Id.* (*citing United States v. Frady*, 102 S. Ct. 1584, 1595 (1982)).  There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.  *Id.* (*citing Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003)).

A fundamental miscarriage of justice is accomplished by a petitioner demonstrating that he or she is actually innocent of the crime for which he or she was convicted.  *Brinkley v. Houk*, 2011 WL 6029941, *18 (N. D. Ohio 2011) (*citing Schlup v. Delo*, 115 S. Ct. 851, 861 (1995)).

14

Actual innocence means factual innocence, not mere legal insufficiency. *Id.* To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Bozsik v. Bradshaw*, 2010 WL 7702230, *46 (N. D. Ohio 2010) (*citing Schlup v. Delo*, 115 S. Ct. 851, 862 (1995)). Therefore, to prevail on an actual innocence argument, a petitioner must support his or her allegations of constitutional error with new reliable evidence, whether it is exculpatory, scientific evidence, trustworthy eyewitness accounts or critical physical evidence that was not presented at trial. *Id.* (*citing Schlup*, 115 S. Ct. at 865).

**3.     ANALYSIS OF PETITIONER'S FIRST GROUND FOR RELIEF.**

Petitioner contends that he was denied his right to a speedy trial. He presented this issue to both the appellate court and the Supreme Court of Ohio. Even if Petitioner had focused his contention on the speedy trial provisions under the Sixth Amendment, Petitioner raised this argument as a violation of OHIO REV. CODE § 2945.71, not as a constitutional violation (Docket No. 9, Attachment 1 pp. 32-34 of 288).

Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts. *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (*citing Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law. *Id.*

15

(*see Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (*citing McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  A petitioner need not cite "chapter and verse" of constitutional law, *Id.* (*citing Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)), but "[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated."  *Id.* (*citing McMeans*, *supra,* 228 F.3d at 681; *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984)).  To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments.  *Id.* at 401.

In his direct appeal, Petitioner phrased his allegations as a denial of constitutional rights but failed to claim that specific constitutional rights were violated.  He cited to one federal authority, *Klotfer v. North Carolina*, 90 S. Ct. 347, 349 (1967), to support his state-based speedy trial claim (Docket No. 9, Exhibit 10, p. 51 of 288).  The Ohio Court of Appeals' decision was based entirely on state statutory requirements and considerations (Docket No. 9-1, pp. 153-193 of 288).  Since Petitioner failed to allege a denial of the specific constitutional right in question on direct appeal and to the Ohio Supreme Court, his first ground for relief is procedurally defaulted.  With no procedural avenues available for relief at this juncture in the litigation, it would be futile for Petitioner to seek consideration and corrections in state court.  It is clear that the state court would hold the claims procedurally barred and base its judgment on the procedural default.

Petitioner has effectively waived his Sixth Amendment claim unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors or that the failure to consider the claims will result in a fundamental miscarriage of justice.

16

Petitioner is silent on the issue of whether he has cause for overcoming the procedural default. Similarly, he failed to satisfy the prejudice element to overcome the procedural default bar.  Nor has Petitioner shown that if his claims were not considered on the merits, a fundamental miscarriage of justice will occur or a conviction of one who was actually innocent resulted.

The Magistrate finds that ground one is procedurally defaulted and waived for purposes of habeas review.

## 4.    ANALYSIS OF PETITIONER'S SECOND GROUND FOR RELIEF.

Petitioner argues that he was denied due process of law when the trial court refused to give a jury instruction proffered by defense counsel about the weight of the co-defendant's plea and the trial court did not instruct the jury that a guilty plea by his co-defendant could not be considered evidence of Petitioner's guilt.  On direct appeal, the Eighth District Court of Appeals found this argument without merit.   The appellate court held that the trial court properly instructed the jury by giving effect to the requested instructions.  The court held:

> The trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law, so long as the substance of the request is included in the instructions which are given.  *State v. Jackson,* Cuyahoga App. No. 80879, 2002-Ohio-5851, ¶ 49.

> Although the trial court may not have given the exact instruction requested by Petitioner, it did tell the jury that evidence of a witness's prior convictions was not to be used for anything but 'testing the witness's credibility or believability, and the weight to be given to the witness's testimony.'  We find that this is a sufficient instruction.  Accordingly, Petitioner's eighth assignment of error is overruled.

> *State v. Greene*, 2009 Ohio 850 (2009).

Errors on instructions given to the jury are not reviewable unless they deprive a defendant of constitutional due process.  *Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir.2003) (*quoting Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000)).  The court must determine "'whether

17

the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process.'" *Byrd v. Collins,* 209 F.3d 486, 527 (6th Cir.2000) (*quoting Estelle v. McGuire*, 112 S. Ct. 475, 482 (1991)). Therefore, to "warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter,* 548 F.3d 449, 455 (6th Cir. 2008) *cert. denied*, 130 S. Ct. 366 (2009) (*citing Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir. 1997) (*citing Estelle v. McGuire*, 112 S. Ct. 475, 482 (1991), *Henderson v. Kibbe*, 97 S. Ct. 1730, 1736 (1977), and *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986)). When a court makes an error in instructing the jury, the proper inquiry is "whether there is a reasonable likelihood that the jury" applied the instruction "in an unconstitutional manner." *Id.* (*citing Victor v. Nebraska*, 114 S. Ct. 1239, 1243 (1994) (*citing Estelle*, *supra*, 112 S. Ct. at 482)).

The significance of the omission of instruction is best evaluated by comparison with the instruction that was given in this case. The trial court told the jury that Seth Green was Petitioner's accomplice and that he had pleaded guilty to the same crimes as charged in Petitioner's case. The jury was further informed that Petitioner and Seth Green were subject to the same penalties of eight to eighteen years. The trial court also told the jury not to be persuaded by any aspect of Seth Green's testimony that was conjecture and that it was within their discretion what weight to give to Seth Green's testimony. The jurors were exhorted to consider the testimony of Seth Green with all the evidence (Docket No. 9-7, pp. 83-84 of 140). It cannot be said that given these instructions the jurors were unclear about the weight to give Seth Green's testimony or the correlation between Seth Green's plea and evidence of Petitioner's guilt. Even if an error occurred instructing the jury how to treat Seth Green's testimony, habeas relief cannot be granted as Petitioner has failed to show that the instruction given had a

18

substantial and injurious effect in determining the jury's verdict.

The state court's denial of this claim was not contrary to nor did it involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  The Magistrate finds that Petitioner is not entitled to habeas review on this claim.

**5.      ANALYSIS OF PETITIONER'S THIRD GROUND FOR RELIEF.**

Petitioner filed a motion for new trial, arguing that an acquittal of his co-defendant on the murder charge subsequent to Petitioner's trial constituted newly discovered evidence which he should have an opportunity to present at a new trial.  In the direct appeal and appeal to the Supreme Court of Ohio, Petitioner argued that the trial court abused its discretion and misapplied Ohio law when denying his motion for new trial under OHIO CRIM. R. 33 based on newly discovered evidence, and that the court of appeals' decision to perpetuate the error was a denial of due process of law (Docket No. 9, Exhibit 25; Attachment 2, pp. 69, 108 of 148).

The Magistrate finds that on the merits of this ground for relief, habeas relief is not warranted.  Petitioner does not cite to or identify any federal law that these rulings are contrary to or an unreasonable application of clearly established federal law.  Neither does Petitioner invoke federal due process by making a passing reference to a constitutional violation. Petitioner's claim that the underlying state courts erred in failing to grant him a new trial based on newly discovered evidence is premised on issues of state law.  As a general rule, state law issues are not subject to habeas review.  *Pudelski v. Wilson*, 576 F.3d 595, 610 -611 (6ᵗʰ Cir. 2009) (*see Estelle v. McGuire*, 112 S. Ct. 475, 479 (1991)).  In fact, this Court can only review the denial of a motion for a new trial if there is a constitutional error.  *Id.*  To establish a constitutional due process claim, a petitioner must demonstrate that the trial court's denial of his

19

motion for new trial was "so egregious" that it violated his right to a fundamentally fair trial.  *Id.* (*see Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)).

The Magistrate finds that the trial court rulings were not so egregious because the jury which heard the evidence at Mark Greene's trial knew that Seth Green was taking a plea bargain. Petitioner's success on his own motion filed pursuant to OHIO CRIM. R. 29 did not change Seth Green's plea agreement.  A change in the details of Seth Green's plea bargain, if any, would not have been material to Petitioner's guilt since it would not have rendered Seth Green's testimony false or unimpeachable.  The trial court did not abuse its discretion or misapply Ohio law when denying Petitioner's request for a new trial.  Accordingly, Petitioner is not entitled to habeas relief on his third ground for relief.  Petitioner's claims are premised on issues of state law.

## VI. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: June 5, 2012

20

## VII. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6ᵗʰ Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

21